

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.:1:10CR433 |
| | ) | Hon. Claude M. Hilton |
| MARIA ALEJANDRA ESPINOZA | ) | |

## STATEMENT OF FACTS

Were this matter to proceed to trial, the United States would prove the following facts beyond a reasonable doubt with reliable and credible evidence:

1. The George Washington Memorial Parkway is a federal roadway that is within the special maritime and territorial jurisdiction of the United States, in the Eastern District of Virginia.

2. On Tuesday, October 13, 2009, at approximately 2:00 a.m., Maria Alejandra Espinoza was operating a 2004 Infinity FX35 southbound along the George Washington Memorial Parkway in the area known as Boundary Channel when she was involved in a single car crash, resulting in a fatality of one passenger and serious injury of another. Two passengers were in her vehicle at the time of the crash. Ashley Roberta, 22, occupied the front passenger seat and Charles (Charlie) Davies, Jr., 23, was in the back seat.

3. Maria Espinoza and Ashley Roberta had departed together from Ms. Espinoza's home earlier on the evening of October 12, 2009. They had gotten together with Charlie Davies, based on previously arranged plans, at about 10:30 p.m. at a Georgetown restaurant. The three left the restaurant and arrived at a nearby Washington, D.C. nightclub that was hosting a private event,

put on by Red Bull, Ashley Roberta's employer, around 12 midnight. Once inside the nightclub, Maria Espinoza and Ashley Roberta separated from Charlie Davies so that they could socialize with others that they knew who were attending the event. While Ms. Espinoza and Ms. Roberta were with others, Mr. Davies remained with two friends in another area of the club. He consumed very little alcohol during the evening and was not under the influence. As the event was winding down, Ms. Espinoza agreed to give Charlie Davies a ride back to his Crystal City, Virginia hotel. The three departed the nightclub together at approximately 1:30 a.m. and walked to Ms. Espinoza's vehicle, which was parked a short distance away.

4. Ms. Espinoza was unfamiliar with the George Washington Memorial Parkway and the location of Davies' hotel or how to get there. Mr. Davies also was unfamiliar with directions to the hotel. As a result, Ms. Espinoza used a blackberry to retrieve the street address and entered it into a portable G.P.S. device located on the center console of her sport utility vehicle. While navigating her way to the Virginia hotel, Ms. Espinoza missed an exit and the G.P.S. began to recalculate her position and the correct route to take. During this time Ms. Espinoza looked away from the road in order to look at her G.P.S. device. Ms. Espinoza was driving above the posted speed limit of 40 miles per hour, she was distracted with the GPS, and she was intoxicated. All of these factors resulted in her crash into the Boundary Channel bridge abutment.

5. Accident reconstructionists established that the Infinity driven by Espinoza was in proper mechanical condition with no defects or malfunctions, that it would pass a state safety inspection, and that it had not been subject to any recalls. Further, it was determined that she did not brake prior to the crash. The vehicle had run off the roadway surface onto the soft shoulder

as evidenced by tire indentations spanning 113 feet prior to impact. The vehicle impacted the bridge abutment with its passenger side near the A pillar. The bridge has a blunt end guardrail with no attenuation. The force of the impact cut the car in half on a diagonal to the driver's side C pillar. The front half of the vehicle rode the bridge abutment for approximately 20 feet. The rear half of the vehicle rolled down a 17 foot embankment coming to rest in thick brush on the passenger's side.

6. After the crash, Espinoza got out of the driver's seat and went down the embankment to find Roberta and Davies. A husband and wife came upon the accident scene soon after it occurred. The male went down the embankment to render assistance while his wife called 9-1-1. As the male came down to the vehicle, he observed Ashley Roberta on the ground, adjacent to the vehicle. He observed Espinoza attempting to help Davies by pulling him out of the vehicle. Because Davies was pinned in the back of the vehicle and in apparent critical condition, the male directed Espinoza to leave him where he was, and advised her that 9-1-1 was called.

7. Once emergency personnel arrived on the scene, Charlie Davies was extricated and transported by USPP Eagle helicopter to Medstar in critical condition. He incurred life-threatening and permanent injuries as a result of the accident. The injuries included a broken fibula, tibia and femur of his right leg, torn ligament in his left knee, fractured left elbow, fractured eye socket and nose, serious head trauma and a lacerated bladder. These injuries resulted in numerous surgeries and significant rehabilitative therapy. Ashley Roberta was pronounced dead on the scene. A subsequent autopsy confirmed that she died as a result of the crash from blunt impact injuries of the head, neck, torso and lower extremities. Espinoza was

transported to Medstar by ambulance for observation and treatment of minor injuries. Blood samples were collected as evidence. Espinoza's blood contained a blood alcohol concentration of .13%.

In all instances related to the driving while intoxicated, the defendant acted knowingly and recklessly. The crash and resulting death of Ashley Roberta and injuries to Charlie Davies were unintentional, but nevertheless the result of criminal conduct.

Respectfully submitted,

Neil H. MacBride
United States Attorney

_____
Rosanne C. Haney
Assistant U.S. Attorney

_____
Patricia Haynes
Assistant U.S. Attorney

4

## DEFENDANT'S STIPULATION AND SIGNATURE

After consulting with my counsel, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

By: _____
Maria Alejandra Espinoza
Defendant

## DEFENSE COUNSEL'S SIGNATURE

We are counsel for Maria Alejandra Espinoza. We have carefully reviewed the above Statement of Facts with the Defendant. To our knowledge, the Defendant's decision to stipulate to these facts is informed and voluntary.

By: _____
Peter D. Greenspun
Counsel for the Defendant

_____
Jonathan Shapiro
Counsel for Defendant

1